**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CHARLES D. PARKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-1229-D |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. Charles D. Parks, seeks judicial review of a denial of disability insurance benefits and supplemental security income benefits by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that this Court reverse the Commissioner's decision and remand the case for further proceedings.

**I.    Agency Proceedings**

Mr. Parks filed applications for disability benefits on April 11, 2005, alleging an inability to work since October 1, 2003. *See* Administrative Record [Doc. #13] (AR) at 57-59. Mr. Parks' applications were denied initially and on reconsideration. Following a hearing before an Administrative Law Judge (ALJ), the ALJ found that Mr. Parks was not disabled. AR 10-21. The Appeals Council denied Plaintiff' request for review, AR 5-8, making the decision of the ALJ the final decision of the Commissioner.

## II.     The ALJ's Decision

The ALJ applied the five-step sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 and 416.920. He first determined that Mr. Parks has not engaged in substantial gainful activity since October 1, 2003. AR 15. At step two, the ALJ determined that Mr. Parks' chronic obstructive pulmonary disease (COPD), generalized anxiety disorder and hypertension are severe impairments that cause significant limitations in his ability to work. AR 15. At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 15, 18. At step four, the ALJ determined that Mr. Parks has the residual functional capacity (RFC) for light work and that Mr. Parks cannot return to his past relevant work, all of which required the ability to perform at the heavy exertional level. AR 18. At step five, the ALJ relied on vocational expert testimony and determined that Mr. Parks is capable of performing the jobs of mail room clerk and vending machine attendant. The ALJ found that these jobs exist in significant numbers in the national economy. AR 19. Based on his step-five findings, the ALJ determined that Mr. Parks was not disabled within the meaning of the Social Security Act.

## III.    Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172

(10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

### IV.   Issues Raised on Appeal

Mr. Parks contends that the ALJ's credibility findings are not supported by substantial evidence, that the ALJ's hypothetical questions to the vocational expert (VE) did not include all limitations supported by the record, and that the ALJ's analysis of the medical evidence and formulation of the RFC are faulty.

### V.   Analysis

#### A.   The ALJ's Credibility Analysis

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Nevertheless, a court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and

not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (quotation omitted).

In discounting Mr. Parks' credibility, the ALJ stated that Mr. Parks' medically determinable impairments "could reasonably be expected to produce some of the alleged symptoms, but that [Mr. Parks'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 19. To support his credibility findings, the ALJ relied primarily on activities Mr. Parks can still do. The ALJ found that Mr. Parks can shop, do laundry, prepare meals, take care of his personal needs, socialize and play cards. AR 19. As for Mr. Parks' anxiety, the ALJ noted that Mr. Parks is able to make change, handle a savings account, pay bills, watch television, and engage in written and spoken conversations. AR 17. The ALJ also noted that Mr. Parks has never been hospitalized for COPD, nor has he seen a psychiatrist for his anxiety.[1] AR 19. These observations, based on specific evidence in the record, are sufficiently linked to the ALJ's credibility finding, and remand on this basis is not required.

### B.     The ALJ's Hypothetical Question to the VE

According to Mr. Parks, the ALJ failed to include all of his impairments in the hypothetical questions to the VE and, based on the resulting testimony, the ALJ erred in the step-five analysis and conclusion.

---

[1] Mr. Parks' physicians have, however, prescribed anti-anxiety medications.

In his first hypothetical question to the VE, the ALJ set forth the exertional limitations for light work and non-exertional limitations including "no extended exposure to pollutants, dust, and fumes" and limitation in "understanding and memory to short and simple instructions and one or two step repetitive tasks." AR 216. In response, the VE identified two unskilled jobs that Mr. Parks could do with the limitations the ALJ had included in the hypothetical question: mail room clerk and vending machine attendant. AR 216-217. The second hypothetical question included the additional limitations of needing to recline two to three hours a day, of having a 20% reduction in concentration, and being unable to respond appropriately to changes in the work setting. The VE testified that no jobs would be available for such a person.[2] AR 217.

Mr. Parks objects to the ALJ's statement that the hypothetical person could not work in an environment with an "extended exposure to pollutants, dust and fumes." Brief in Chief at 11. Mr. Parkes contends, without citation to evidence in the medical records, that he could not work in an environment with *any* exposure to pollutants, dust or fumes. Brief in Chief at 12. Mr. Parks also states that the job of mail room clerk identified by the VE would actually be performed in an atmosphere "filled with paper dust and airborne allergens" and that the job of vending machine attendant would require "constantly un-boxing and placing

---

[2] As discussed in further detail below, Mr. Parks has been diagnosed with obesity. The ALJ did not consider whether Mr. Parks' obesity exacerbates his COPD or results in other limitations. If another administrative hearing is held, the ALJ should include any limitations caused by obesity in the hypothetical question.

5

packages in a machine in varied environments . . . whereby dust and airborne paper and dust particles are a constant irritant." Brief in Chief at 12.

The Dictionary of Occupational Titles (DOT) includes a description of environmental conditions for the jobs it lists and describes. The job of mail room clerk is described at § 209.687-026. *See* DICOT § 209.687-026, 1991 WL 371813. The job of vending machine attendant is described at § 319.464-014. *See* DICOT § 319.464-014, 1991 WL 672766. Neither one of these jobs includes a description of adverse environmental conditions, nor does Mr. Parks offer any citation to evidence in the record regarding such conditions. If this case is remanded and another hearing is held, the ALJ's hypothetical question may change to reflect the RFC determination made after further consideration of the evidence. Remand based solely on bald assertions of adverse environmental conditions for mail room clerks and vending machine attendants, however, is not warranted.

      **C.**     **The ALJ's Analysis of the Medical Record and RFC Determination**

Mr. Parks' medical history includes records from emergency rooms and primary care providers indicating a history of COPD, anxiety, high blood pressure and obesity. On July 1, 2005, Raymond J. Dougherty, M.D., a consultative physician, evaluated Mr. Parks at the request of the State of Oklahoma Disability Determination Services and conducted pulmonary function studies. Two measurements are taken on such tests by using a spirometer. The forced expiratory volume ($FEV_1$) value is used to determine the existence and severity of OCPD. The forced vital capacity (FVC) value is used to determine the existence and severity of chronic restrictive ventilatory disease (CRVD). *See* 20 C.F.R. Pt.

404, Subpt. P, App. 1 § 3.02.  The regulations stipulate that at least three tests for each value should be completed without the use of a bronchodialator: three tests for FEV1 and three tests for FVC.  If the largest resulting value for FEV1 is less than 70% of the predicted value, three more tests for each value must be repeated after the use of a bronchodialator.  The FEV1 and FVC values used to determine whether a listing is met is the largest of value out of three satisfactory forced expiratory maneuvers.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00(E).

Mr. Parks' largest FEV1 value before the use of a bronchodilator was 1.56 with a predicted value of 3.75.  The largest FEV1 value after the use of a bronchodilator was 1.78. AR 151.  A person of Mr. Parks' height with an FEV1 value less than or equal to 1.55 would meet the listing for COPD and be presumptively disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02(A), Table I.

Mr. Parks' largest FVC value before the use of a bronchodilator was 2.32 with a predicted value of 4.80.  His largest FVC value after the use of a bronchodilator was 2.67. AR 151.  A person of Mr. Parks' height with an FVC less than or equal to 1.75 would meet the listing for CRVD and be presumptively disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02(B), Table II.

Based on his examination and the pulmonary function studies, Dr. Dougherty diagnosed Mr. Parks with marked obstructive impairment with significant improvement after bronchodilators.  He also diagnosed Mr. Parks with obesity.  AR 148.

In his summary of Dr. Dougherty's test results, the ALJ incorrectly labeled the "FVC" values as "FEV," resulting in a confusing list of "FEV" and FEV1 values.  AR 18.  Despite

this mistake, the ALJ's conclusion that Mr. Parks "does not meet the requirements of this respiratory listing," AR 18, is correct. Standing alone, this error might be considered harmless. Additionally, however, the ALJ stated in his step-four analysis, "This pulmonary function study does not show the severity of [Mr. Parks'] breathing problems." AR 19. The meaning of this statement is not entirely clear, but it suggests that the ALJ found Mr. Parks' breathing problems to be more severe than indicated by the objective spirometry tests. If this is the correct interpretation, then the ALJ should have given more consideration to the possibility that Mr. Parks' combined impairments might equal the listed impairment.

Another deficiency in the ALJ's analysis is his failure to consider the combined effects of Petitioner's obesity and his COPD. On the day Dr. Dougherty examined him, Mr. Parks weighed 229 pounds and stood 70.75" tall. AR 147. His body mass index (BMI) on that date was 33. According to the Centers for Disease Control and Prevention (CDC), an adult with a BMI of 30 or higher is considered obese. *See* Overweight and Obesity: Defining Overweight and Obesity, CDC, http://www.cdc. gov/nccdphp/dnpa/obesity/defining.htm.

When a claimant has a respiratory disorder and is also obese, the regulations specifically require consideration of the combined effects of obesity and the respiratory disorder:

> Obesity is a medically determinable impairment that is often associated with disturbance of the respiratory system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential

> evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00(I). The ALJ's failure to consider the combined effects of obesity and COPD does not comply with the governing regulations and casts doubt on the validity of the RFC determination. This error requires reversal and remand for further proceedings. On remand, the Commissioner should reconsider the RFC determination after a complete analysis of the medical evidence in accordance with the applicable legal standards.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by August __18th__, 2008. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __29th__ day of July, 2008.

_/s/ Valerie K. Couch_
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE